IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KERREY BUSER, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | 8:04CV5002 |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN L. REED, M.D., and JAMES D. SMITH, | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

This matter is before the court on a motion for summary judgment filed by defendants John L. Reed ("Reed") and James D. Smith ("Smith"), Filing No. 55. The court, having considered the motion, the plaintiff's response, the defendants' reply, and the record and relevant law, now determines that the motion for summary judgment should be granted.

**Undisputed Facts**

Plaintiff Kerrey Buser ("Buser") is a physician who holds a valid license to practice medicine and surgery in the State of Nebraska. *See* Filing No. 51, Third Amended Complaint at ¶ 3. Smith is an Assistant Attorney General whose duties, during all times relevant to this matter, included filing civil actions against physicians and presenting evidence at disciplinary hearings before the Nebraska Board of Medicine and Surgery (hereinafter "the Board").[1] *Id.* at ¶ 5. Reed is a medical doctor who, during all times relevant to this matter, served as a member of the Board. *Id.* at ¶ 6.

---

[1] The Board is responsible for regulating the practice of medicine and surgery in the State of Nebraska. See Neb. Rev. Stat. § 71-112.01 (Reissue 2003). This responsibility includes the power to review and screen complaints against physicians and make findings and disciplinary recommendations to the Nebraska Attorney General. See Neb. Rev. Stat. § 71-168.01 (5) (Reissue 2003).

On October 2, 1998, the State of Nebraska filed a Petition for Disciplinary Action against Buser.  *See* Filing 57, Ex. 1 at ¶ 2.  The petition alleged, among other things, that plaintiff misrepresented material facts on his application for license to practice medicine in the State of Nebraska.  *Id.*  On October 21, 1998, after the allegations against Buser became public, Buser and Smith met.  *Id.* at ¶¶ 3-10  At that time, Buser indicated that he had information which demonstrated the allegation of misrepresentation to be inaccurate. *Id.*  On or about November 29, 1998, Buser provided such information to Smith, who then dropped the misrepresentation claim.  *Id.*  The State subsequently filed a Second Amended Petition on March 18, 1999, and a Third Amended Petition on April 12, 1999, neither of which alleged that plaintiff had made misrepresentations.  *Id.*

On August 9 and 10, 1999, and October 7, 1999, a public evidentiary hearing concerning the state's petitions for disciplinary actions against Buser took place.[2]  *Id.* at ¶ 11-12.  Members of the public, including members of the media, attended the hearing.  *Id.* On February 4, 2000, the Department of Health and Human Services Regulation and Licensure (hereinafter "the Department") issued its Findings of Facts and Conclusions of Law and Order in the action against Buser.[3]  *Id.* The order placed certain one-year

---

[2] The hearing was before an Administrative Law Judge.  The Department of Health and Human Services Regulation and Licensure is responsible for appointing a hearing officer to preside over the disciplinary hearing.  Neb. Admin. Code, Title 184, Chapter 1, Section 008.01A (2004).

[3] The Department oversees the general administration of the activities of the Board.  *See* Neb. Rev. Stat. § 71-121.01 (Reissue 2003).  The Department initiates investigations against physicians, and when the investigation is complete, the Department consults with the Board to obtain its recommendations for submission to the Attorney General.  *See* Neb. Rev. Stat. § 71-168.01(5) (Reissue 2003).  The Director of the Department is responsible for hearing and determining disciplinary complaints, however, a Chief Medical Officer can also be appointed to perform the Director's duties.  *See* Neb. Rev. Stat. §§ 71-155 and 71-155.01 (Reissue 2003).  The

restrictions on Buser's license to practice medicine in the State of Nebraska, and also required him to pay a $5,000.00 civil penalty. *Id.* On February 23, 2000, the State of Nebraska filed a petition for Judicial Review of the Department's order. *Id.* at ¶ 13. On October 19, 2000, the District Court of Lancaster County, Nebraska, affirmed the order of the Department. *Id.*

On August 5, 2002, the state filed a new Petition for Disciplinary Action against Buser. *Id.* at ¶ 14. Subsequently, an Associated Press reporter contacted Reed. *See* Filing No. 57, Ex. 2, pp. 1-2; Ex 2A. The reporter asked Reed to respond to Buser's allegation that Reed had a mission to revoke his license. *Id.* Reed denied Buser's allegation and indicated that the Board unanimously filed the petition against Buser. *Id.*

Initially, Buser filed suit against Reed, Smith, and several members of the Nebraska State Board of Medicine claiming, among other things, that he was denied due process of law in his disciplinary administrative hearings. *See* Complaint, Filing No. 1. All defendants, however, filed a motion to dismiss, Filing No. 14. The court granted, in part, and denied, in part, that motion. See Memorandum and Order, Filing No. 38. The only remaining issue in this case is Buser's claim that Smith and Reed made inappropriate statements to the press regarding his disciplinary hearings. *Id.*

Now before the court is a motion for summary judgment filed by Smith and Reed who argue that there are no genuine issues of material fact with respect to Buser's remaining claim and that they are entitled to judgment as a matter of law. In his opposing brief, Buser acknowledges that he does not have a claim against Smith and withdraws the

---

Department has the authority to make findings of fact, conclusions of law or disposition. *Id.*

claim against him.  *See* Filing No. 75, Plaintiff's Brief in Opposition at 2.  Accordingly, the court will grant defendants' motion for summary judgment with respect to Smith.  Buser, however, contends that Reed made inappropriate statements to the press and others regarding the disciplinary matters.  Buser argues that defendants' motion with respect to Reed should be denied.  For the reasons stated below, the court determines that defendants' motion for summary judgment with respect to Reed should be granted.

## Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See* Fed.R.Civ.P. 56(c).  A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  In order to determine which facts are material, courts should look to the substantive law in a dispute and identify the facts which are critical to the outcome.  *Id.*  The movant bears the burden of establishing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial.  *Id.*  Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial.  *Id.*  To successfully oppose the motion for summary judgment, the non-movant cannot rest on the pleadings alone, but must

designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.*

## Discussion

Buser claims that Reed made inappropriate comments to the press and others concerning his disciplinary matters. He contends Reed's comments constitute a violation of his constitutional rights under the Due Process Clause. Reed, on the other hand, contends that he did not make any statements that violated Buser's rights. Reed claims there are no genuine issues of material fact with respect to Buser's claim, thus, he is entitled to summary judgment. The court agrees.

In *Paul v. Davis,* 424 U.S. 693 (1976), the Supreme Court held that in order to state a claim under 42 U.S.C. § 1983 for violation of the Due Process Clause, a plaintiff who complains of defamation must claim (1) the existence of a public false statement (or a statement that could be proved false) about him by a state actor, which is sufficiently derogatory to injure his reputation, and (2) some tangible and material state-imposed burden or alteration of his status or of a right in addition to the stigmatizing statement. *See Paul*, 424 U.S. at 701-02, 710-11. These requirements are known as the "stigma plus" test. See *Gunderson v. HVASS,* 339 F.3d 639, 644 (8th Cir. 2003); *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001); *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999): *WMX Techs, Inc. v. Miller* 197 F.3d 367, 376 (9th Cir. 1999); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991). To meet the first prong, the stigma, the plaintiff must show that a state actor made concrete false assertions about him that could injure his reputation. See *Paul*, 424 U.S. at 701-02. To meet the second

5

prong, the "plus," the plaintiff must demonstrate an alteration or impairment of "a right or status previously recognized by state law." *Id.* at 711.

In this case, Buser claims that Reed made comments to the press that violated his due process rights. Specifically, Buser claims that, following the filing of the second petition for disciplinary action against him, Reed made defamatory statements about him. The record, however, does not indicate that Reed made any such comments to the press. The record indicates that an Associated Press reporter asked Reed to respond to Buser's allegations that he had a mission to revoke Buser's medical license. *See* Filing No. 57, Ex. 2 and 2A. According to the Associated Press article, Reed made two statements: (1) "[Buser] has to realize the entire board unanimously filed the petition" and (2) "I flat out deny that it's a personal vendetta that I'm out to get him." *Id.* The court does not find either of these two statements to be defamatory or sufficiently derogatory to injure Buser's reputation. Buser claims that Reed's comments are defamatory because "he implied the entire board voted to recommend that plaintiff's medical license be revoked . . ." *See* Filing No. 75, Plaintiff's Brief in Opposition at ¶ 8. But, the exhibit which he uses to support this argument, namely, Reed's deposition, indicates that the whole Board votes on whether to file a complaint and that "the entire board unanimously filed [the] petition." *See* Filing No. 77, Ex. 12, 25: 3-11, 104: 9-10. Reed's statement to the press does not imply that the Board recommended that Buser's license should be revoked.

However, even assuming that Reed's comments could be construed as defamatory, Buser still has to prove the "plus" prong to properly make his constitutional claim. *See Paul*, 424 U.S. at 701-02. As indicated above, with respect to the "plus" prong, the plaintiff must demonstrate an alteration or impairment of "a right or status previously recognized

6

by state law." *Id.* at 711. Buser contends that when Reed spoke to the press he did so in violation of state law. According to Buser, under Neb. Rev. Stat. §§ 71-161.03 and 71-168.01(7)-(8) (Reissue 2003), the complaint filed against him did not constitute a public record and had to be kept confidential. Buser claims Reed clearly violated his right to confidentiality under those statutes. The court, however, does not agree.

Neb. Rev. Stat. § 71-161.03, in its relevant part, provides:

> Any petition filed with the Director of Regulation and Licensure . . . may, at any time prior to entry of any order by the director, be disposed of by stipulation, agreed settlement, consent order, or similar method as agreed to between the parties. . . . Meetings of the board for such purpose shall be in closed session, and any recommendation by the board to the Attorney General shall not be a public record until the pending action is complete...

Rev. Stat. § 71-161.03. Clearly, this statute only applies to disciplinary petitions which could be disposed of by stipulation, agreed settlement or consent by the parties. It does not apply to a petition which, like Buser's, is contested by the parties. This statute does not provide support for Buser's position.

Likewise, Neb. Rev. Stat. § 71-168.01 does not support Buser's position. This statute, in its relevant part, provides:

> (7) Complaints or investigational records of the department shall not be public records, shall not be subject to subpoena or discovery, and shall be inadmissible in evidence in any legal proceeding of any kind or character *except a contested case before the department. Such complaints or records shall be a public record if made part of the record of a contested case before the department. . . .*

Neb. Rev. Stat. § 71-168.01. Clearly this statute states that if plaintiff's case is a contested one, the complaint or investigational records of the department are a public record. The Nebraska Supreme Court has indicated that, under the Administrative Procedure Act, a case becomes contested when a hearing is required. *See Stoneman v. United Nebraska*

7

*Bank*, 254 Neb. 477, 577 N.W.2d 271 (1998).  Thus, when there is "a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined" the case has become contested.  *Id.* (*quoting* Neb. Rev. Stat. § 84-901(3) (Reissue 1994)).  In this case, Buser has not provided any evidence which indicates that the complaints filed against him did not constitute contested matters.  He has not provided any evidence which indicates that those matters could be disposed of by stipulation, agreed settlement, consent order, or similar method as agreed to between the parties. Nor has he provided any evidence indicating that those matters did not require a hearing. The complaints against Buser constituted contested matters requiring the Department to determine Buser's rights, duties and privileges.  Therefore, under this statute, Buser did not have any confidentiality rights.  But even if he had, nothing in Reed's statements to the press indicate that he revealed details of the complaint or investigational records.

Buser also claims that Reed revealed details of the disciplinary complaints to other persons.  Buser alleges that Reed revealed details of the complaints to Michael Rapp, M.D. ("Rapp").  *See* Plaintiff's Brief in Opposition at ¶ 9.  Buser points to Rapp's deposition to support his position.  *See* Filing No. 77, Ex. 8.  This deposition, however, does not indicate that Reed revealed any of the details of the complaints or investigational records to Rapp. In his deposition, Rapp stated:

Q. Okay. And was the conversation strictly between you and Dr. Reed?

A. I do not know.

Q. What was said during the conversation?

A. All I remember is the tone of the conversation.

> Q. What do you remember about the tone?
>
> A. The tone of the conversation was that he was convinced there was a problem.
>
> Q. Okay. And when you say a problem, tell me what your impression was.
>
> A. That there was reason for investigation of the problem.

*See* Filing No. 77, Ex. 8, 8: 8-19.  Rapp's deposition indicates that, even before Reed talked to him, he already knew of Buser's investigation.  Rapp stated:

> A. So in specifics to your question, I knew there was an investigation.  I had no idea anything about the hierarchy of the investigation in the State of Nebraska at that time.
>
> Q. Okay.
>
> A. Had no idea how serious it was for him or anything.

*Id.* at 10: 20-25.  But, the deposition does not indicate that Reed told Rapp about the investigation nor does it indicate that he revealed any details of the complaint to him.

Buser also alleges that Reed disclosed details of the complaints and investigations to John Buckley, M.D., who is married to the sister-in-law of Buser's sister-in-law.  *See* Plaintiff's Brief in Opposition at ¶ 11 and Filing No. 77, Ex. 4.  Buser points to John Buckley's deposition to support his assertion.  *See* Filing No. 77, Ex. 7.  However, this deposition does not indicate that Reed revealed any of the details of the complaint or investigational records to John Buckley.  To the contrary, the deposition indicates that when Reed initially approached John Buckley about the case, Buckley, without any discussion, told him he did not want to be involved.[4]  In his deposition, John Buckley stated:

---

[4] Under Neb. Rev. Stat. § 71-168.01(3): "A professional board may designate one of its professional members to serve as a consultant to the department in reviewing complaints and on issues of professional practice that may arise during the course of an investigation.  Such consultation shall not be required for the department to evaluate a complaint or to proceed with an investigation.  A board may also recommend or

9

Q. Okay did he explain to you the nature of the surgical case?

A. Well, that's kind of where I think my introduction came. He had a case - - it's not uncommon for surgeons, when they're looking for, maybe, solutions to cases or, you know, what to do in a particular case, to maybe run it by one of their peers. And as I recall, he wanted to run a case by me. And it seemed to me that somehow or other it came out that it was a case, maybe, from Lexington. And I had to ask, well, who is the physician involved? And I believe he said Dr. Buser. And I said, sorry, he's part of the family, I cannot participate in that.

Q. Do you recall whether Dr. Reed even got to the facts of the surgical case?

A. I don't recall.

See Filing No. 77, Ex. 7, 7: 22-25; 8: 1-8; 15: 10-12. John Buckley's deposition does not indicate that Reed revealed any of the details of the complaint or investigational records to John Buckley.

Buser also alleges that Reed disclosed details of the complaints to John Buckley's wife, Krynn Keller Buckley, M.D. ("Krynn Buckley"). See Plaintiff's Brief in Opposition at ¶ 12. Buser alleges that Krynn Buckley related such incident to his sister-in-law, Terri Keller. Id. Buser points to Krynn Buckley's deposition to support his assertion. See Filing No. 77, Ex. 10. However, again, this deposition does not indicate that Reed revealed any details of the complaint to Krynn Buckley. In fact, in her deposition, she indicates that she never mentioned anything regarding Buser's investigation to Terri Keller. She stated:

Q. Terri Keller is related to Dr. Buser; is that correct?

A. She's his sister-in-law, yes.

Q. Do you recall, while you were in the Keller's home for their daughter's first communion, do you recall a conversation with Terri Keller where you discussed attending a disciplinary matter involving Dr. Kerrey Buser?

---

confer with a consultant member of its profession to assist the board or department on issues of professional practice. . . ." Id.

10

> A. Not in the least.
>
> Q. Do you recall, while you were in the Keller's home for their daughter's first communion, do you recall stating to Terri Keller that, if you had given your opinion, it would not have been favorable to Dr. Buser?
>
> A. I don't remember talking about anything about Kerrey.
>
> Q. Is your answer no?
>
> A. No, I did not talk about it.

*See* Filing No. 77, Ex 10 8: 9-13; 8-9: 25- 7. Krynn Buckley's deposition, contrary to Buser's argument, does not indicate that Reed revealed any details of the complaints or investigations to her.

Finally, Buser also alleges that Reed disclosed information of the complaints to the mother of Krynn Buckley, Jane Keller. *See* Plaintiff's Brief in Opposition at ¶ 12. Buser alleges that Jane Keller related such incident to Terri Keller. *Id.* Buser points to Jane Keller's deposition to support his position. *See* Filing No. 77, Ex. 9. However, this deposition does not indicate that Reed revealed any details of the complaints or investigations to Jane Keller. In fact, in her deposition, Jane Keller indicates that she cannot even remember if she had talked to Terri Keller at all. *Id.* at 8: 2-13. Buser's claim that Reed revealed details of the complaint or investigational records to Jane Keller, the press, and colleagues is without merit.[5]

---

[5] Furthermore, as defendants point out in their brief in support, Buser's claim against Reed in his individual capacity for injunctive relief fails because Reed is no longer a member of the Nebraska Board of Medicine and Surgery (Filing No. 80). *See U.S. v. Santee Sioux Tribe of Nebraska,* 135 F.3d 558 (8th Cir. 1998) (injunctive relief should not be considered unless record shows real threat of future violation of law or contemporary violation of a nature likely to continue or recur).

Based on the foregoing, the court determines that Buser's claim against defendants fails as a matter of law and that defendants' motion for summary judgment should be granted.

IT IS, THEREFORE, ORDERED:

That defendants' motion for summary judgment, Filing No. 55, is granted. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 6th day of February, 2006.

BY THE COURT:

s/Joseph F. Bataillon
Joseph F. Bataillon
United States District Judge